```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,     .
                              .
         Plaintiff,           .  CR No. 24-0135 (TSC)
                              .
     v.                       .
                              .
JOHN BANUELOS,                .  Washington, D.C.
                              .  Monday, May 20, 2024
         Defendant.           .  3:02 p.m.
. . . . . . . . . . . . . . . .
```

## TRANSCRIPT OF ARRAIGNMENT HEARING
## BEFORE THE HONORABLE TANYA S. CHUTKAN
## UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        REBEKAH LEDERER, AUSA
                           U.S. Attorney's Office
                           601 D Street NW
                           Washington, DC 20530

For Defendant:             MICHAEL E. LAWLOR, ESQ.
                           Brennan McKenna & Lawlor
                           6305 Ivy Lane
                           Suite 700
                           Greenbelt, MD 20770

Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           U.S. Courthouse, Room 4704-A
                           333 Constitution Avenue NW
                           Washington, DC 20001


Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
1                        P R O C E E D I N G S
2                          (Via Videoconference)
3              THE DEPUTY CLERK:  We are on the record with
4    criminal case 24-135, United States of America versus John
5    Banuelos.  Counsel, starting with the government, please
6    state your appearance for the record.
7              MS. LEDERER:  Good afternoon, Your Honor.
8    Rebekah Lederer on behalf of the United States.
9              THE COURT:  Good afternoon.
10             MR. LAWLOR:  And good afternoon, Your Honor.
11   Mike Lawlor for Mr. Banuelos, and I apologize for my tardiness,
12   Your Honor.  I was in a detention hearing, actually, on the
13   second floor of this courthouse.
14             THE COURT:  That's okay.  I'm glad you were released.
15       Good afternoon, Mr. Banuelos.  I am Judge Chutkan.  Your
16   case has been assigned to me.  Can you hear me?
17             THE DEFENDANT:  Yes, ma'am.  You're looking lovely.
18             THE COURT:  Well, thank you.
19       Okay.  So we're here for an arraignment of Mr. Banuelos in
20   this case.  On March 14, 2024, Mr. Banuelos was indicted on six
21   counts of criminal conduct arising from the riots at the U.S.
22   Capitol on January 6, 2021.  I believe he had his initial
23   appearance before Judge Meriweather, who excluded time under the
24   Speedy Trial Act through May 17, and then I have received the
25   government's unopposed motion to toll time through today, which
```

1       I'll get to in a moment.
2           Mr. Banuelos, have you ever appeared in federal court
3       before, before this case?
4                 THE DEFENDANT:  No.  I have no -- no.
5                 THE COURT:  Okay.  Let me explain to you what the
6       Speedy Trial Act means and what the motion to toll time means,
7       because you're going to hear a lot of things; you should
8       understand them.
9           In federal court there's something called the Speedy Trial
10      Act which says you're entitled to a jury trial within 75 days of
11      your arraignment.  In 99 percent of all criminal cases, the
12      parties agree -- both the defense and the government agree to
13      stop the clock from running at various times to get ready,
14      because there's no point in going to trial in 75 days if you're
15      not ready to go to trial in 75 days.
16          So, frequently, there will be a request to stop the speedy
17      trial clock while the parties get -- you know, engage in
18      negotiations.  There has been a request by the government to
19      exclude the time -- hold on -- and your lawyer does not object,
20      because obviously you haven't been provided discovery yet; you
21      haven't had a chance to discuss the case with your lawyer.
22          So that's what the motion is about, and, therefore, based
23      on the fact that this is our first hearing and that the parties
24      are not yet up to speed, I will grant the motion, finding that
25      the interests of justice outweigh the public and the defendant's

1   right to a speedy jury trial, and I will exclude from the
2   computation under the Speedy Trial Act the time from the initial
3   appearance which was -- what day?
4           THE DEPUTY CLERK:  May 9.
5           THE COURT:  Thank you.  From May 9 to today's date.
6   Now, Mr. Banuelos, you had something to say?  I must caution you
7   before you say anything, anything you say to me can be used
8   against you.  So that's why you have a lawyer.  You sure you --
9           THE DEFENDANT:  Yes.  I want to go per se and --
10          THE COURT:  Okay.
11          THE DEFENDANT:  -- be my own lawyer.
12          THE COURT:  All right.  Have you ever been your own
13  lawyer before?
14          THE DEFENDANT:  No.  I heard that you guys are going
15  to give me a helper; right?
16          THE COURT:  No, no, no, no.  Let me just explain how
17  it works.  You can go per se -- pro se.  It's you're right to.
18  But it's very dangerous to do that, and I'll tell you why you
19  should think about this.  In -- wait, wait.
20          THE DEFENDANT:  -- case over this, I've been --
21          THE COURT:  Exactly.  And that's why it's so important
22  that you listen to me.  You know, sometimes they say when you --
23          THE DEFENDANT:  -- nothing anymore.  Nothing to scare
24  me now.
25          THE COURT:  Well, you're only just meeting me.

1  When you're in a hole, it's sometimes good --

2  THE DEFENDANT: I'm in Chicago, ma'am. I've never
3  been to jail before. I'm in federal prison. What he else
4  could happen?

5  THE COURT: Well, Mr. Banuelos, listen to me.
6  Sometimes -- I know think you've hit rock bottom and you might
7  as well go pro se, because what else could be worse. Trust me,
8  worse things could be here. That is why you have, in Mr. Lawlor
9  and his partner Mr. Madiou, they get -- I give them like the
10  toughest cases. And I'm not saying you're a tough case.

11  They are very, very experienced, patient, hardworking
12  lawyers who are devoted to the rights of the accused. These
13  guys, Mr. Lawlor and Mr. Madiou, they have appeared in front
14  of me many, many times and they work very, very hard for their
15  clients. So you may feel right now that -- hold on.

16  THE DEFENDANT: Question: Why am I over there when
17  there's judges over here?

18  THE COURT: Because all the January 6 cases --

19  THE DEFENDANT: There's a sheriff, a firefighter, and
20  three are other people before me that stayed over here.

21  THE COURT: Okay. Let me stop you.

22  THE DEFENDANT: Why am I --

23  THE COURT: All the January 6 cases, all of them, are
24  being brought in this court. You are simply on your way to this
25  court. But you cannot just stay in jail forever before going

1  before a judicial officer.  That's not how our system works,
2  which is why we're doing this on Zoom --
3           THE DEFENDANT:  Well, can I wait six months after?
4           THE COURT:  No, no.  Well, look.  I don't bring you.
5  The marshals bring you.  So you are making your way here, and
6  I didn't want you -- nobody wants you languishing in a jail --
7           THE DEFENDANT:  -- been in here three months, ma'am.
8           THE COURT:  Okay.  Mr. Banuelos --
9           THE DEFENDANT:  I think that --
10          THE COURT:  I understand your frustration.  We're
11 going to have to agree on something here.  You're going to have
12 to agree on something here:  You can't interrupt me.  Okay?
13          THE DEFENDANT:  Yes, ma'am.
14          THE COURT:  We have a camera, we have a court reporter
15 whose hair is going to go on fire if we talk over each other,
16 because he has to write things down.  So we've gotta do one at a
17 time.  I'll try not to interrupt you; you try not to interrupt
18 me.  Okay?
19          THE DEFENDANT:  (Nods.)
20          THE COURT:  Okay.  And the defendant is nodding,
21 for the record.
22      All the January 6 cases come here.  Now, the reason for
23 your arrest this long after, none of that has anything to do
24 with me.  I need to get you processed, I need to get you
25 counsel, Judge Meriweather appointed you counsel, and we're

1  going to get you here, meaning the District of Columbia.
2      But your question to me is why other people are there and
3  you're here.  I don't know what that means, but all the January
4  6 cases come here.  They're prosecuted here in the District of
5  Columbia.  They may be arrested elsewhere, they may be held
6  elsewhere, but the court and the judge is in D.C. because this
7  is where the crime happened.
8          THE DEFENDANT:  Okay.  I feel there's some people that
9  think that I'm a Republican and they're kind of biased, maybe
10 not racism, but I think they're kind of iffy about me because I
11 was -- anyways.
12         THE COURT:  Hold on.  Don't say anything that's going
13 to --
14         THE DEFENDANT:  I gotta watch what I say.  But it's
15 hard for me to trust people because they don't have the best
16 interest of me in mind.
17         THE COURT:  I --
18         THE DEFENDANT:  So I kind of now have been able to
19 read kind of people by their color of their hair and -- listen,
20 I want to stay in Chicago.  I fear for my life over there in
21 D.C.  They told me I can do that, and all the sudden my "public
22 pretenders" switch up on me and say I gotta go over there.
23         THE COURT:  Okay.  Well, first of all, let's not go
24 name-calling.  I used to be a public defender, and Mr. Lawlor
25 and Mr. Madiou work really hard for their clients.  So a couple

1   of things:

2   One.  I don't care what party you are.  I really don't
3   care.  Or what color your hair is.  I want to get your case
4   moving so you can have access to all the rights to which you're
5   entitled.  Unfortunately, you cannot stay in Chicago because you
6   have to be brought to the District of Columbia, which is where
7   the crime occurred, to answer for that crime.  And that's where
8   you've been charged.  If there's a trial, that's where the trial
9   is going to take place.  You don't have an option to stay in
10  Chicago.

11  Second.  You haven't been a criminal defendant in a federal
12  court before, Mr. Banuelos.  It's complicated, okay?  It's not
13  as simple as coming in and saying I plead guilty, not guilty,
14  bring in a jury.  These cases are very complicated.

15  You have been appointed extremely experienced, knowledgeable,
16  zealous lawyers to represent you, and I really think you should
17  talk to them, get to know them, get to understand them.  It's
18  not up to them where you're brought.  It is totally not up to
19  them.  The marshals are bringing you to D.C. because that is
20  where the charges have been brought.  It's that simple.

21  Okay.  Go ahead.

22  THE DEFENDANT:  Your Honor, another thing, if I made
23  it from -- allegedly from Chicago to D.C., so I don't care.  It
24  doesn't matter, Ms. Judge.  It don't really matter.  From Utah
25  to there, right?  Why -- because I don't have a place to stay,

1   why am I still being held?  Because I don't have liabilities?
2           THE COURT:  No, no, no.
3           THE DEFENDANT:  Why is other people out and I'm still
4   in here?  It doesn't bother me.  It is -- you know what I'm
5   saying.  I'm not jealous or mad that other people have money and
6   I don't, but why am I still being held while other people are
7   walking around --
8           THE COURT:  It is totally not a money issue.  It is
9   the charges against --
10          THE DEFENDANT:  Okay --
11          THE COURT:  -- you.  Hold on.  No, no.  We made a
12  deal.  I'm talking now.  It's not based on money and if you have
13  a place to stay.  The reason you are being held is a magistrate
14  judge has found that based on the charges against you, the
15  allegations against you, you should not be released because you
16  are dangerous or you may not come to court.
17      Now -- hold on.  That's why you're being held, not because
18  of money or a place to stay.  When you get here, your lawyers
19  may file -- after you meet with them and talk with them, they
20  may file what's called a bond review motion, okay?
21      They may file a motion to say, hey, Judge, can you release
22  him with conditions?  Can you release him and put him on an
23  ankle monitor?  They may do that.  I may say yes; I may say no.
24  It's early days yet.  But for right now I want to arraign you on
25  these charges, and I want to get you to D.C.  Okay?  And I want

```
 1    you to talk to your lawyers.
 2              THE DEFENDANT:  Ma'am, it's hard for me to trust my
 3    lawyers.
 4              THE COURT:  I understand.
 5              THE DEFENDANT:  It's like people have some sort of
 6    agenda, like they're playing a game of chess --
 7              THE COURT:  I am going to interrupt you.
 8              THE DEFENDANT:  I've been out for four years, ma'am,
 9    and they come get me now?  They've known where I was at.  They
10    had my phone number.  I'm not a flight risk.  I've been on GPS
11    in Chicago.  You know what I'm saying?  None of this makes
12    sense.  And to me it's like they're fucking --
13              THE COURT:  Uh-uh --
14              THE DEFENDANT:  -- but they're playing.
15              THE COURT:  Okay. Let me stop you.  The reasons for
16    the delay, I don't know.  I can't speak to that.  But I will say
17    this:  It is perfectly normal.  I understand.  Right?  You just
18    came into the system.  You don't know who these lawyers are.
19    You're feeling very paranoid about, you know, who has an agenda.
20    I can assure you -- and that's not uncommon.  Okay?
21         When I was a public defender, I would meet my clients all
22    the time and they'd being like, who you are?  I don't trust you.
23    I understand. What you're feeling is -- you're very confused
24    and you're very suspicious, and that's normal.  But let me tell
25    you -- and you don't know me either.  Okay?
```

1          But I will tell you this: the two lawyers you have,
2    Mr. Lawlor and Mr. Madiou, fight very, very hard for their
3    clients.  They fight so hard they drive me crazy sometimes.
4    But they're very, very dedicated lawyers, and you should at
5    least give them a chance.  Will you do that?  Will you at
6    least talk to them and give them a chance?
7              THE DEFENDANT:  Okay.  Yes, ma'am.
8              THE COURT:  All right.  All right.
9         So let's get what we need to get done today, which is the
10   arraignment.  Let me explain what an arraignment is.  It's a
11   technical word, but it's not that complicated.  It is simply
12   the formal presentation of the indictment against you.  Okay?
13        The Constitution says every person in the United States
14   charged with a felony must be indicted by a grand jury.  You
15   have been indicted by a grand jury.  And now we go to an
16   arraignment, where you're presented with the indictment and your
17   lawyer will enter a plea on your behalf, and then we'll move
18   forward from there.  Okay?  So that's what's going to happen
19   today.
20        Madam Courtroom Deputy, will you arraign Mr. Banuelos.
21             THE DEPUTY CLERK:  May the record reflect that the
22   parties received a copy of the indictment filed on March 14,
23   2024.  Mr. Banuelos, you are charged in six counts of the
24   information --
25             THE COURT:  Is it an information?

```
 1                THE DEPUTY CLERK:  I'm sorry.
 2                THE COURT:  Indictment.
 3                THE DEPUTY CLERK:  Indictment.  Of the indictment with
 4    the following charges, Mr. Banuelos:
 5        Count 1.  Civil Disorder.
 6        Count 2.  Entering and remaining in a restricted building
 7    or grounds with a deadly or dangerous weapon or firearm.
 8        Count 3.  Disorderly and disruptive conduct in a restricted
 9    building or grounds with a deadly weapon or dangerous weapon or
10    firearm.
11        Count 4.  Unlawful possession of a firearm on a Capitol
12    grounds or buildings.
13        Count 5.  Unlawful discharge of firearm on Capitol grounds
14    or building.
15        Count 6.  Disorderly conduct in a Capitol building.
16        Do you waive formal reading of the indictment, and, if so,
17    how do you wish to plea for the purpose of the arraignment?
18                THE COURT:  Mr. Lawlor?
19                MR. LAWLOR:  Your Honor --
20                THE COURT:  Sorry.  I should have told you,
21    Mr. Banuelos: Mr. Lawlor will enter the plea for you.
22        Go ahead, Mr. Lawlor.
23                MR. LAWLOR:  Yes.  We'll waive formal reading of the
24    indictment, Your Honor, enter a plea of not guilty to all six
25    charges, and request a speedy trial by jury.
```

1        THE COURT: All right. Thank you.

2        Okay. So now, Mr. Banuelos, what's going to happen is I'm
3 going to make sure that the government is turning over all the
4 evidence against you to your lawyer so that you and he can sit
5 down, go over it, and decide what you need to do.

6        The next step after an arraignment is to set what we call
7 a status hearing. And a status hearing, which will be held --
8 hopefully, you will be here by then -- will be in court, and
9 we'll say where the case is going: Are we going to set a trial
10 date? Has all the evidence been turned over?

11        You're going to hear the word "discovery." Discovery
12 simply means the evidence against you. In other words, the
13 government has to turn over the evidence against you, the
14 discovery, to your lawyer so you can see what you're being
15 charged with doing, and you and your lawyer will sit down and
16 go over it. And that's yet another reason why you have to be
17 here, so that you can do this in person. Do you understand?

18        THE DEFENDANT: Yes, ma'am.

19        THE COURT: Okay. So, Ms. Lederer, where are we with
20 discovery? Has that been turned over?

21        MS. LEDERER: Yes, Your Honor. Rule 41 discovery is
22 pretty much complete. There might be one or two more items to
23 go over that are not Rule 41 but just need to be redacted and
24 sent over, and also a -- when any ballistic examination is
25 completed, that report will go over. But all of the Rule 41

1    has gone over, including open-source, CCTV, body-worn cameras.
2    That's all been itemized and sent to Mr. Lawlor.
3              THE COURT:  Okay, good.
4        Mr. Lawlor, do you have any idea when Mr. Banuelos will be
5    arriving in this jurisdiction?
6              MR. LAWLOR:  I don't, Your Honor.  And just let me say
7    for the record that Mr. Banuelos has advised me he wants to stay
8    in Chicago, and as the Court says, there's not a way to make
9    that happen.  I would, but the Court knows that even you,
10   Your Honor, have no jurisdiction over the sort of marshals'
11   goings-on, and I certainly don't.  So I don't know when he will
12   be brought here, but I do hope it will be soon so that he and I
13   can meet and review the discovery.
14             THE COURT:  Okay.  So, Mr. Banuelos, Mr. Lawlor is
15   correct.  The marshals bring you here.  I'm not the boss of
16   them.  They watch out for me, in fact.  And a lot of things go
17   into when you're brought.  Sometimes they're waiting for more
18   people to bring everybody together.  Sometimes it depends on
19   when they can get the transportation.
20       What I can do, and I will do, is make an inquiry to see
21   when you're going to get here.  Okay?  I will do that.  I'll
22   make an inquiry to the marshals to see when you get here.
23       Okay.  Yes, sir.
24             THE DEFENDANT:  Ma'am, I thank you for all the hard
25   work and for you being governor, okay?  And you're --

1             THE COURT:  For being what?

2             THE DEFENDANT:  For being the -- you're the governor,
3    right?  The mayor.  What is it --

4             THE COURT:  Judge.  Judge.  No, I'm not a --

5             THE DEFENDANT:  I went to court, it says "lady
6    governor" or "lady judge."  They don't say "judge;" they say
7    "lady governor" or -- yeah, governor.

8             THE COURT:  Well, Judge is fine.  Let's just stick
9    with that.  Leave the politics to the politicians.

10            THE DEFENDANT:  They don't say "judge."  They say
11   "governor."  The lady governor stands up, everybody stands up.
12   Well, even in this building, this is all new to me, but what I
13   want to say is it seems like why some people get to stay here
14   and do their case here with the judges here and I'm over there --

15            THE COURT:  Hold on --

16            THE DEFENDANT:  -- somehow that I can --

17            THE COURT:  Nobody --

18            THE DEFENDANT:  -- back over here with the judge?

19            THE COURT:  The only people that get to stay there and
20   do their case there are people who have been charged -- and by
21   "there" you mean Chicago, right? -- are people who have been
22   charged --

23            THE DEFENDANT:  No, no, no.  I'm saying they're for
24   D.C.  There was a sheriff there that went to D.C.  There was a
25   firefighter that went to D.C.  There was another guy.  I'm not

1    the only one with these cases, ma'am.  There are other people.
2                THE COURT:  But they were brought here.  They may
3    have gotten to stay initially for a while, but every single one
4    of those people -- I'm assuring you, every single January 6
5    defendant, unless they were misdemeanors and they were out --
6    hold on.  No, no.  Let me finish.  We have a deal.
7         Unless -- a lot of people have been charged with
8    misdemeanors and they haven't been locked up, and they have been
9    allowed to stay remotely where they are and we've handled their
10   cases remotely by Zoom.  But anybody who has been detained
11   pending trial so -- okay?  Anyone locked up pending trial -- and
12   that's you right now at the moment -- has been brought to D.C.,
13   I guarantee you.  Sheriff, firefighter, no matter what.
14        If they are detained pending trial, they're brought to D.C.
15   I also had a guy, a defendant, who was detained in Alaska, and
16   he was brought here.  It took weeks, but he was brought here.
17   Everyone who's detained pending trial is brought here.  So
18   anybody you know about who got to stay there, either they were
19   released pending trial, or they weren't charged in a January 6
20   offense.
21               THE DEFENDANT:  Well, one more thing, ma'am.
22               THE COURT:  Sure.
23               THE DEFENDANT:  If you can see where the judge, what
24   the governor said from here, it says I wasn't detained because
25   I'm dangerous; I was detained because she wasn't sure I would

1   make it to court.  If you read back in specifics what she just
2   said and --
3           THE COURT:  Okay.  The standard is both dangerousness
4   and return to court.  But because of the charges you face,
5   including a weapons charge, I believe one -- I think it might
6   have a mandatory -- correct me if I'm wrong, Mr. Lawlor, but I
7   think there's a mandatory rebuttable presumption of detention.
8      A detention decision was made before I got in the case.
9   When you get to D.C., if your lawyer thinks there's a legal
10  option, they will file what we call a bond review motion to get
11  you out, put on a monitor, whatever.  But right now the main
12  thing is to get you to D.C., and there's no option right now for
13  you to stay in Chicago.  Okay?
14          THE DEFENDANT:  Okay.
15          THE COURT:  So you're going to talk to Mr. Lawlor
16  and/or his partner, Mr. Madiou.  Like I said, they're very good
17  lawyers and because I really think you need to think about
18  carefully about that.  You're in too much trouble to be joking
19  around, Mr. Banuelos.  You're in too much trouble --
20          THE DEFENDANT:  Well, President Trump's going to be
21  in office six months from now, so I'm not worried about it.
22          THE COURT:  Well, you know, that may be so.  I don't
23  know.  That has nothing to do with my job.  My job is to
24  continue to move your case along in a fair and efficient manner,
25  and that's what I'm doing.  So let's set this date for a status

1    hearing, another hearing, by which time I hope you will be here
2    in person and we can handle the case then.
3         How much time do you need, Mr. Lawlor?
4         MR. LAWLOR:  Your Honor, I don't really need any time.
5    I just don't know when Mr. Banuelos is going to be here.
6         THE COURT:  I'm going to inquire of the marshals --
7    well, you do need some time.  You need some time to go over
8    discovery with him.
9         MR. LAWLOR:  I know that you --
10        THE COURT:  I'm going to find out, if I can, when his
11   projected arrival date will be, and then I will set a status
12   date, or my clerk will contact you and Ms. Lederer to find out
13   when you're available for a status hearing.
14        THE DEFENDANT:  One thing to my lawyer.  I just have
15   one question to my lawyer when we're done.
16        THE COURT:  Hold on, Mr. Banuelos.
17        MR. LAWLOR:  The clerk will break us out.
18        THE COURT:  You know what, I'm going to let you talk
19   to him in private because there's something called lawyer-client
20   confidentiality.  Everything you say to your lawyer and he says
21   to you is confidential under the law, but if you say it in front
22   of me and Ms. Lederer, it's not.  And I don't want you doing
23   that.  You're entitled to have private conversations with your
24   lawyer.  So when I step off, I'm going to ask the deputy to keep
25   you in the room so you can talk to Mr. Lawlor.  Okay?  I'm

1   trying to protect some of your rights here, okay?  So don't you
2   go breaking confidentiality.
3           All right.  So what I'll do is I'll inquire about
4   Mr. Banuelos's arrival.  I will then set a status hearing based
5   on that, and if there's a motion to exclude the time, I'll
6   exclude the time nunc pro tunc till our status hearing date.
7   Anything else, Mr. Lawlor or Ms. Lederer?
8                MR. LAWLOR:  No, Your Honor.
9                MS. LEDERER:  No, Your Honor.  Thank you.
10               THE COURT:  Okay.  Thank you.
11          Okay.  Mr. Banuelos, I'll see you next time, hopefully
12  in person.
13               THE DEFENDANT:  Yes, ma'am.
14       (Proceedings adjourned at 3:25 p.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*/s/ Bryan A. Wayne*
Bryan A. Wayne