**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-135-TSC** |
| | : | |
| **JOHN BANUELOS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL FROM ORDER OF
DETENTION AND REQUEST FOR A HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that this Court deny Defendant's Appeal from Order of Detention (ECF No. 17). Based on the compelling evidence of Defendant Banuelos's dangerous conduct, there are no conditions of release that can reasonably assure the safety of the community. Banuelos's pretrial detention is appropriate pursuant to 18 U.S.C. § 3142(f)(1)(E) because there is no combination of conditions that will reasonably ensure the safety of the community, and pursuant to 18 U.S.C. § 3142(f)(2)(A), because this case presents a serious risk of flight by the defendant.

Banuelos entered the restricted perimeter of the United States Capitol Building grounds during the riot that took place on January 6, 2021. While on the grounds, Banuelos made threatening gestures to law enforcement and helped the crowd push against police lines that were established to stop rioters on the west grounds. Banuelos climbed the Inaugural Stage scaffolding, took out his revolver, and fired two shots into the air. Moreover, as described in detail below, Banuelos has an extensive criminal history and is currently wanted in Utah for two misdemeanor domestic violence offenses after his failure to appear for proceedings. The only actual change in circumstances, since Banuelos' arrest and original detention, is the fact that the grand jury indicted the defendant on three additional crimes as well. *See* ECF No 18 (Superseding Indictment).

For these and other reasons set forth herein, the United States respectfully requests this Court to deny Banuelos' appeal and motion for release.

## I.        **Procedural Background**

On March 7, 2024, U.S. Magistrate Judge for the District of Columbia Robin M. Meriweather issued a Criminal Complaint charging Banuelos in violation of 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1752(a)(1), and (b)(1)(A) (Entering and Remaining Restricted Building or Grounds with a Deadly Weapon); 40 U.S.C. § 5104(e)(2)(D) (Act of Physical Violence in a Capitol Building or Grounds); § 5104(e)(1)(A)(i) (Unauthorized Possession of a Firearm on Capitol Grounds); and § 5104(e)(1)(A)(ii) (Discharge of a Firearm on the Capitol Grounds).

Banuelos was arrested on March 8, 2024, and he had his initial appearance before this Court on the same day. On March 13, 2024, the Honorable Judge Jantz of the Northern District of Illinois, ordered Banuelos detained (at the motion of the government) finding by clear and convincing that "that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and by preponderance of the evidence "that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." *United States v. John Banuelos*, 24-cr-125, ECF No. 13 at 2.

On March 14, 2024, Banuelos was indicted on all charged counts. *See* ECF 6. On May 9, 2024, Banuelos made his initial appearance in this District and was arraigned by this Court on May 20, 2024. On June 20, 2024, Banuelos appeared before the Court for a status hearing, during which the Court set an additional status hearing for August 21, 2024. On August 14, 2024, a Superseding Indictment was returned, further charging Banuelos with violations of 22 D.C. Code, § 4503.01 (Unlawful Discharge of a Firearm), 22 D.C. Code, § 4504(a) (Carrying a Pistol Without a License (Outside Home or Place of Business)), and 7 D.C. Code, § 2502.01(a) (Possession Of Unregistered

Firearm). On the same day, Banuelos filed an appeal an Appeal from Order of Detention. *See* ECF 17.

## II.     FACTUAL BACKGROUND

### A.     The Events of January 6, 2021

For background on January 6, 2021, the government refers the Court to the Statement of Facts. ECF 1-1.

### B.     The Dangerous Conduct of John Banuelos on January 6

Banuelos entered the restricted grounds during the riot at the Capitol on January 6. At approximately 1:24 p.m., Banuelos made his way to the front of the crowd opposite the police line. Officers were attempting to reestablish the police line using metal barricades after a skirmish with the crowd. CCTV footage from the Capitol and open source captured Banuelos pointing at officers and kicking the metal barricade at least two times at approximately 1:25 p.m. *Exhibit 1* at :52-1:05 and *Exhibit 2*.[1]



*Still from Exhibit 2 at :27.*

---

[1] All exhibits have been made available to the Court and Defense counsel via USAfx. The exhibits were also provided during discovery.

At approximately 1:26 p.m., CCTV captured Banuelos holding up his gloved hand to form the shape of a "finger gun" and simulated "firing" multiple times in the direction of officers. *Exhibit 3*.



*Still from Exhibit 3*

At approximately 1:56 p.m. Banuelos is captured in CCTV and open-source video, using his body to forcefully push with the crowd against officers in an attempt to breach the line of officers on the northwest side of the West Plaza. *Exhibit 4, Exhibit 5,* and *Exhibit 6*.



*Still from Exhibit 5 at :07.*



*Exhibit 6*

The push by the crowd and Banuelos continued, intermittently, for approximately three minutes. During this sequence, Banuelos raised his jacket to reveal the handle of a firearm in his waistband. *Exhibit 7* and *Exhibit 8*.



*Exhibit 7*

Banuelos moved to the south side of the West Plaza where, at approximately 2:28 p.m., he was a part of a crowd that breached the police line. *Exhibit 9* and *Exhibit 10*. By this time, Banuelos removed the cowboy hat and changed into a red puffer jacket as depicted in Exhibits 9 and 10 below. Banuelos was also pictured in the red puffer and hat earlier in the day. ECF 1-1 at 2 (Images 1 and 2).



*Still from Exhibit 9 at timestamp :56.*



*Still from Exhibit 10 at :14.*

At approximately 2:33 p.m., CCTV captured Banuelos scaling the southwest Inaugural Stage scaffolding. Banuelos can be seen waving the crowd towards him before pulling the firearm from his waistband. Open-source media and CCTV captured Banuelos raising the gun over his head, and, at approximately 2:34 p.m., firing two shots into the air. Banuelos returned the firearm to his waistband and climbed down the scaffolding, rejoining the crowd below. *See* Exhibits 11 and 12. The two shots, though not captured on video, are also audible in BWC and other open-source media. *Exhibit 13* at :14 *et seq.* and *Exhibit 14* at :19 *et seq.*



*Still from Exhibit 11[2]*

C.      **Additional Investigation and Identification of BANUELOS**

Following January 6, 2021, the FBI issued a photograph of Banuelos as a person of interest in connection with the events at the Capitol (the "Banuelos BOLO"). The Banuelos BOLO was

---

[2] In Exhibit 11, Banuelos is wearing identical pants and poots to those worn in Exhibit 6.

also disseminated on social media platforms including X/Twitter by non-law enforcement including an account identified here as Account 1. In February of 2021, a witness called in a tip identifying Banuelos as the individual flashing the firearm. In July of 2021, Banuelos was investigated for a fatal stabbing in Utah. During questioning, Banuelos told local law enforcement that he went inside the capitol and was the person seen in a video with a gun. In March of 2022, the FBI contacted Banuelos to ask about his claims that he went inside the Capitol. Banuelos stated he did not go inside the Capitol. Banuelos told agents he would not speak with them but stated he did not go inside the Capitol. Banuelos hung up and then called agents making incoherent sentences saying people were trying to trick him and were messing with his mind.

On October 4, 2023, an account with vanity name "John Banuelos" and handle @JohnBan21401662 (the "Banuelos Account"), responded to Account 1's post concerning the Banuelos BOLO with a video that shows Banuelos racking the slide of a semi-automatic weapon in a video. *Exhibit 15*.[3]



*Still from Exhibit 15*

_____

[3] The distinctive tattoo shown in the video matches a tattoo on the hand of Banuelos.

In January of 2024, FBI agents interviewed Banuelos in response to his social media posts. Banuelos stated he did not make the posts, denied intending to threaten anyone, and claimed that "many" of his posts were done by artificial intelligence. Banuelos further stated that any weapons seen in the video posts were fake and/or done by artificial intelligence and agreed to refrain from posting any further threatening messages.

A week later, on February 8, 2024, a video was posted online that showed Banuelos firing two shots into the air at the Capitol on January 6. *Exhibit 11*. On February 10, 2024, the Banuelos Account posted a response to the February 8th video by Tweeting an image of a semi-automatic firearm that may be an image sourced by Banuelos from the internet.



*Exhibit 16*

On February 10, 2024, Banuelos responded to an X user's call to find all "insurrectionists" with the photo of him flashing the butt of his gun. *Exhibit 17*.

Agents began monitoring Banuelos' cellular location data starting in February 2024 which consistently placed Banuelos at his mother's house in Summit, Illinois. Agents also observed Banuelos traveling between the property and his pace of employment. Banuelos was also captured on a police camera exiting and entering the basement floor of the property. On March 8, 2024,

agents executed an arrest and search warrant. Banuelos was located in the mother's home in Summit, Illinois. During the search, agents located and seized a bb-gun and what has been determined to be a starter pistol revolver in a basement closet that is accessible to others in the home. Also found in the closet was an open safe with cash that was claimed by another family member. Banuelos' wallet was in a room next to the basement door. Banuelos' cell phone was located in a kitchen drawer on the main floor.

During the search, agents were alerted that Banuelos splits his time between his mother's home and an apartment in Maywood, Illinois. Agents were able to confirm the secondary address. During processing, Banuelos provided a false address, specifically giving the address across the street from his Maywood apartment as his home address, *i.e*, Banuelos provided a house number that ended in 01 rather than 06. Agents executed a warrant at the accurate address in Maywood, where agents found paystubs addressed to Banuelos.

On March 15, 2024, agents conducted an interview of a person known to Banuelos. During the interview, the person told agents that they asked a family member to take several firearms because they did not want firearms under their roof (the Summit address). The person stated they could not remember when they asked the family member to take the guns and that they did not know if any of the guns had been taken to Washington, D.C. The person recounted the transient living pattern of Banuelos, stating they allowed him to stay in the basement over the objections of other family members. The person also told agents that on the morning of Banuelos' arrest, he blamed them and threatened to run but was able to convince him otherwise.

On March 22, 2024, agents spoke with the family member who agreed to take the firearms from the Summit home. The family member stated that approximately a year prior to the interview, the person asked the family member to take several firearms including one Banuelos had

purchased. The family member indicated they were unaware whether the firearm was the same one Banuelos brought to Washington, D.C. but did tell agents that Banuelos called, after January 6, 2021, to brag about going to the United States Capitol. The family member retrieved the firearm from a safe and told agents they had not touched the gun since the firearm was provided, wrapped in a towel, by the perosn. The firearm was a .38 revolver with grip tape on the handle-consistent with the revolver seen in open-source photographs (see below photographs).

The revolver was taken as evidence and submitted to the FBI Firearms Laboratory for examination and testing. Examination of the revolver revealed the make and model to be a .38 Special caliber Rexio revolver, Model Pucara 384, Serial Number C25447. The revolver was test fired and it was determined to be operable. In other words, the pistol the defendant fired into the air during a riot was a real firearm capable of firing live ammunition.



*Zoomed in still from Exhibit 7*



*Zoomed in still from the FBI Firearms Labratory*

### III.   THIS COURT SHOULD DENY DEFENDANT'S APPEAL AND DETAIN DEFENDANT BANUELOS AS A DANGER TO THE COMMUNITY AND AS A SERIOUS FLIGHT RISK

Pursuant to 18 U.S.C. § 3142(a), in relevant part, when a defendant is arrested, the Court "shall issue an order that, pending trial, the person be (1) released on personal recognizance . . . ; (2) released on a condition or a combination of conditions . . . ; or (4) detained under subsection (e)." Detaining a defendant under Section 3142(e) requires a hearing "pursuant to the provisions of subsection (f)." *Id.* at § 3142(e). If the Court determines after that hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must detain the defendant pending trial. *Id.* § 3142 (e)(1). The evidence more than establishes that Banuelos should be detained pending trial.

The government bears the burden of persuasion on the issue of pretrial detention. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). In determining whether the government has met its burden of persuasion, this Court must consider four factors: (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b); *Stone*, 608 F.3d at 945. When "risk of flight" is the basis for detention, however, the government must only satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

Banuelos argues, in his motion that he did not "engage in violent acts" during an incident that "occurred more than three years ago" and therefore should be released pending trial. ECF No 17 at 5-6. These assertions ask the Court to ignore the blatant evidence of Banuelos' dangerous and violent behavior of January 6 as well as his extensive criminal and flight histories.

For the reasons below, these factors weigh in favor of continued detention in this case.

### A.      <u>**Defendant Banuelos is Charged with a Serious Offense**</u>

The nature and circumstances of the offense charged in this case militate strongly in favor of detention. Banuelos has been charged with an extremely serious offense, arising from his conduct on the Capitol grounds. As shown in *Exhibit 7* and *Exhibit 8* above, Banuelos displayed a firearm in his waistband around the time that he and the mob were involved in a struggle with

officers. That conduct alone is exceedingly dangerous given the hostile conditions at the Capitol on January 6. But Banuelos went further. As the mob overran officers, Banuelos climbed the scaffolding into view of other rioters, removed the firearm from his waistband, and fired two shots into the air. This wildly dangerous conduct is simply mind-numbing. Any number of life-threatening events could have transpired, e.g., the threat of an active shooter at the Capitol on January 6 could have triggered a lethal response from law enforcement or a stampede of other rioters. Fortunately, none of these events came to pass, but the fact that no such harm ensued does nothing to mitigate the seriousness of Banuelos's actions. Indeed, Banuelos is one of few defendants to have possessed a firearm, and the only known rioter to have fired it. Such behavior puts him in a class of his own.

In considering the nature and circumstances of the offense, the Court should also weigh the possible penalty Banuelos faces upon conviction. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, Banuelos faces a statutory maximum terms of imprisonment of between five to ten years, if convicted of the four felony charges in the complaint.

## B.      The Weight of the Evidence is Strong[4]

Despite his assertions, the weight of the evidence of Banuelos's dangerousness is strong.

On February 8, 2024, a video was posted online that shows Banuelos firing two shots into the air while at the Capitol. The video has been corroborated by multiple other sources, including CCTV footage from the Capitol and audio of body worn cameras worn by officers. The evidence of Banuelos conduct is overwhelming as it is all captured on audio and video. Simply put, there is no greater example of dangerous and out right violent conduct then fire a gun into the air, twice,

---

[4] "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted).

during an on-going riot in which Banuelos simulated firing a gun at officers with his finger, flashed a revolver at reporters, and made good on his threats by firing the gun into the air twice.

Since January 6, Banuelos has effectively celebrated and defended his conduct. He has posted direct messages on social media that include firearms in direct response to other users referencing his conduct on January 6. Though the revolver used on January 6, 2021 was removed from the Summit home, Banuelos continued to have access to firearms as made evident during the search of the Summit home. Specifically, law enforcement recovered a firearm (as well as a BB-gun) from a closet located in the basement where Banuelos was regularly sleeping.

Banuelos continued to example flagrant disregard of his conducted stating, during his first appearance before this Court, "I have nothing to worry about."[5] The defendant clearly does not respect the process and the severity of his alleged conduct. Finally, and as described in more detail below, Banuelos has a lengthy criminal history that includes 19 arrests and five convictions.

 This factor thus weighs strongly in favor of detention.

**C.     History and Characteristics of the Defendant**

Banuelos's conduct on January 6 was not an aberration. Banuelos has a lengthy criminal history that includes incidents of violence. Banuelos has been arrested *19 times*. Currently, Banuelos has two open domestic assault cases that allegedly took place in August of 2021 and September of 2021. Banuelos is currently wanted out of Utah for both cases for failing to appear to proceedings. The government notes that the victim in both cases has also been arrested for domestic assault against Banuelos.

Banuelos has been convicted a total of five convictions as an adult:

---

[5] Several major new outlets reported Banuelos' March 2024 remarks with one example available at https://www.cbsnews.com/news/january-6-defendant-predicts-trump-win-election-criminal-cases/.

- On December 12, 2003, Banuelos was arrested and subsequently convicted of misdemeanor assault in Illinois. He was sentenced to 1 year supervision.

- On July 16, 2006, Banuelos was arrested and subsequently convicted of misdemeanor resisting arrest in Illinois. He was sentenced to 6 months' supervision.

- On April 25, 2011, Banuelos was arrested and subsequently convicted of misdemeanor fleeing and eluding law enforcement in Illinois. He was sentenced to 12 months' supervision.

- On May 14, 2017, Banuelos was arrested and subsequently convicted of possession marijuana and possession of a controlled substance in Utah. He was sentenced to 30 days and 12 months' reporting probation.

- On July 4, 2021, Banuelos was arrested on a warrant from a March 2019 incident, and he was subsequently convicted of assault in Utah. He received a 180-day sentence of incarceration.

On July 4, 2021, Banuelos was investigated for fatally stabbing an individual. Banuelos was not charged with an offense because the incident was determined to be self-defense. However, the incident underscores the potential danger that Banuelos poses to the public were he to be released. The government notes that, during the investigation of the fatal stabbing, Banuelos was arrested on an active warrant stemming from the March 2019 assault. *See* ECF No. 17, at 6 n.2 (minimizing one of the defendant's prior assaults based on the timing of his crime and subsequent conviction).

All in all, Banuelos' criminal record illustrates an individual prone to aggression, willing to take matters into his own hands, and not afraid to use weapons. His history and characteristics thus favor detention.

### D.        Danger to the Community Posed by Banuelos's Release

Banuelos poses a significant safety concern to the public. Banuelos has demonstrated a breathtaking disregard for the safety of those around him. His conduct on January 6-firing a revolver into the air twice- is severe, but it is not isolated. Banuelos has also demonstrated a pattern of violent and threatening behavior when conflict has arisen. Such incidents include episodes of domestic violence as well as the threatening online communications described above.

Banuelos has also shown a blatant disregard for the law and any conditions that the Court might impose on him. Pursuant to a Utah court protective order entered September 23, 2021, Banuelos is prohibited from possessing a firearm, yet he continues to post videos with what appear to be firearms and have access to firearms, including access to a firearm, a starter pistol, that was recovered by law enforcement during the March 8, 2024 search of his mother's house.[6] Banuelos is prohibited from possessing a firearm, yet he continues to possess and have access to them. Furthermore, Banuelos has failed to appear in Utah for domestic violence proceedings there.  The danger to the community is severe. His release in this case on any conditions would jeopardize the safety of the public.

### E.        <u>Risk of Flight</u>

This case also involves a serious risk of flight as defined in 18 U.S.C. § 3142(f)(2)(A). The defendant is facing potential conviction on multiple felony offenses, including 18 U.S.C. § 1752(b)(1)(A), which carries a statutory maximum penalty of up to ten years of incarceration.

---

[6] As defined in 18 U.S.C. §921(a)(3).

Banuelos's criminal history increases the likelihood of a significant period of incarceration. These factors provide considerable motivation for Banuelos to flee.

Banuelos argues that because the FBI has been able to periodically locate him over the past three years, any concern of flight is alleviated. ECF No. 17 at 7. However, that asks the Court to bury its head in the sand regarding past conduct. As stated earlier, there is currently a warrant for Banuelos's arrest for his failure to appear in Utah. Banuelos was convicted of Fleeing and Resisting in 2011. Banuelos has used five different aliases and has a history of being transient. In addition to connections in Utah state, Banuelos has previous addresses and contacts in Florida, Washington state, and varying locations in Illinois. Banuelos told someone he was considering running before the arrest. Furthermore, Banuelos proceeded to give an address he has no apparent connection to during processing.

Finally, as stated before, Banuelos faces a statutory maximum terms of imprisonment of between five to ten years, if convicted of the four felony charges in the complaint. This time represents a substantial penalty, which would serve as powerful motivation for Banuelos to flee the jurisdiction were he to be released. This factor thus weighs in favor of detention.

For these reasons, the Court should find by a preponderance of the evidence that Banuelos poses a serious risk of flight and detain him on that basis.

## IV.   CONCLUSION

Banuelos has shown a disregard for the laws of this country and the safety of others, which makes it inconceivable to trust that he would comply with any conditions fashioned by this Court for his release. Banuelos must continue to be detained pending trial to protect the safety of the community and ensure his return to Court. For the foregoing reasons, as well as any reasons which may be set forth at a hearing on the Defendant's motion, the government respectfully submits that

there exists no condition or combination of conditions which would assure the safety of any person

or the community, or which would ensure the defendant's appearance at his court hearings.

Accordingly, the government requests that the Court deny Banuelos' appeal from order of

Detention.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:     */s/ REBEKAH LEDERER*
        REBEKAH LEDERER
        Pennsylvania Bar No. 320922
        Assistant United States Attorney
        U.S Attorney's Office for District of
        Columbia 601 D St. N.W, Washington, DC
        20530
        Tel. No. (202) 252-7012
        rebekah.lederer@usdoj.gov